UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIRK RICHMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 15 C 479 |
| ) | |
| ADVANCED PAIN CONSULTANTS, ) | |
| S.C., an Illinois Corporation, CENTER FOR ) | |
| INTERVENTIONAL PAIN ) | |
| MANAGEMENT, LLC, an Illinois ) | |
| Corporation, and NICHOLAS KONDELIS, ) | |
| M.D., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the partial motion of Defendants Advanced Pain Consultants, S.C. ("APC"), Center for Interventional Pain Management LLC ("CIPM") and Nicholas P. Kondelis, M.D. ("Dr. Kondelis") (collectively "Defendants") to dismiss Counts II, V, VII and VIII of Plaintiff Dirk Richmond's ("Plaintiff") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, the motion is granted in part and denied in part. The Court dismisses Count V with prejudice and Count VIII without prejudice. Counts II and VII remain, however, Plaintiff's allegations requesting punitive damages in those respective claims are stricken with prejudice.

1

# BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiff's Amended Complaint are accepted as true. The Court draws all reasonable inferences in favor of Plaintiff.

Plaintiff is a resident of Rantoul, Illinois. APC is an Illinois corporation with its principal place of business in Oak Brook, Illinois. CIPM is a limited liability company with its principal place of business in Oak Brook, Illinois. Dr. Kondelis allegedly operates pain management centers, APC and CIPM. On information and belief, Dr. Kondelis is: (i) the sole shareholder of APC; (ii) the principal member of CIPM; (iii) the manager of the companies; (iv) the person with authority to hire and fire APC and CIPM employees; (v) the person with the authority to direct and supervise the work of APC and CIPM employees; (vi) the person with the authority to sign on APC's and CIPM's checking accounts, including payroll accounts; and (vii) the person with the authority to make decisions regarding employee compensation and capital expenditures.

In August 2009, Dr. Kondelis allegedly retained Plaintiff's mother, Donna Jean Gustafson ("Gustafson"), to assist with improving APC's billing procedures. Plaintiff alleges that Dr. Kondelis was pleased with Gustafson's work and in May 2010, he hired Gustafson as a full-time employee with APC as its Director of Patient Billing and Medical Records. In May 2010, facing difficulties in collecting on patient accounts, Gustafson allegedly advised Dr. Kondelis that her son, Plaintiff, had a

strong background in both healthcare finance and computer operating systems and could assist APC in improving its billing and collections procedures. At this time, Plaintiff was also allegedly experiencing health problems and relied solely upon Social Security Supplemental Income ("SSI"). After discussions between Dr. Kondelis and Gustafson, Dr. Kondelis allegedly stated to Gustafson that Plaintiff could provide his services for billing and collection services to APC on a trial basis at $25.00 an hour. Shortly thereafter, Gustafson allegedly relayed "APC's offer" to Plaintiff and he accepted. As a result, Plaintiff alleges that he entered into an oral agreement for consultation services to improve APC's collections' procedures at a compensation rate of $25.00 an hour (the "Consulting Agreement"). On May 27, 2010, Plaintiff allegedly began providing billing and collection services for APC. Plaintiff alleges that within forty-five days of his retention, his efforts produced measurable tangible benefits for APC. On October 13, 2010, Plaintiff's consultation services ended. Plaintiff alleges that as of October 13, 2010, APC has paid Plaintiff nothing, even though he is owed $11,637.50 in consultation fees.

Following his trial period with APC, Plaintiff allegedly continued to assist APC on an *ad hoc* basis, traveling to APC in November 2010 to meet with a software representative, exchanging emails in 2011 addressing APC's potential implementation of new software and generally assisting APC with its ultimate move to new billing software. Dr. Kondelis allegedly communicated to Gustafson his great satisfaction with Plaintiff's work. At some point in the summer of 2011, Dr. Kondelis allegedly

asked Gustafson if Plaintiff would be interested in working full time for APC at its Addison, Illinois location. Dr. Kondelis allegedly suggested a ninety-day trial period for Plaintiff to assist with APC's conversion to new billing software at a pay rate of $25.00 an hour. Plaintiff alleges that Gustafson conveyed the offer to him and he accepted, although he had yet to be paid by Dr. Kondelis for his prior consultation work.

In September 2011, APC and Plaintiff allegedly entered into an oral agreement (the "Employment Agreement") for Plaintiff to work as a full-time at-will employee. On September 14, 2011, Plaintiff began working for APC on a full-time basis. Shortly thereafter, Plaintiff also began his employment with CIPM. From September 14, 2011 to October 19, 2012, Plaintiff allegedly performed a variety of tasks for Defendants, devoting virtually every waking hour of his time to them. Prior to his employment termination on October 19, 2012, Plaintiff allegedly put in close to three full months of around-the clock work at Defendants' Addison location. For ten weeks of that time, he allegedly worked more than ninety hours a week. Following his termination, Defendants, induced by Dr. Kondelis, allegedly refused to pay Plaintiff any portion of his wages earned during that period, including straight-time wages. Dr. Kondelis claims, however, that Plaintiff was not employed by Defendants, but rather an entity entitled Professional Accounts Management ("PAM"), which is a staffing agency allegedly owned and operated by Gustafson.

On January 16, 2015, Plaintiff refiled the instant lawsuit against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, after initially dismissing the case voluntarily. On March 23, 2015, Defendants answered the original complaint and filed a counterclaim against Plaintiff and a third-party complaint against Gustafson and a related entity. On April 13, 2015, Plaintiff filed an eight-count Amended Complaint. The relevant claims to this Memorandum Opinion are as follows: (i) breach of employment agreement against APC and CIPM (Count II); (ii) tortious interference with a contract against Dr. Kondelis (Count V); (iii) breach of consulting agreement against APC (Count VII); and quantum meruit against APC and CIPM (Count VIII). On June 3, 2015, Defendants filed a partial motion to dismiss Counts II, V, VII and VIII of Plaintiff's Amended Complaint. The Court address the instant partial motion to dismiss below.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must allow the court to draw the reasonable

5

inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 678.

## DISCUSSION

### I. Preemption—Counts II, V and VII

Defendants first ask the Court to dismiss Plaintiff's state common law claims, Counts II, V, and VII (the "State Common Law Claims"), based on preemption.[1] Defendants argue that the FLSA preempts the State Common Law Claims because the factual and legal predicate of the State Common Law Claims are premised on, or intertwined with, violations of rights provided under the FLSA. As a threshold issue, preemption is "an affirmative defense, and therefore not really a proper basis for a Rule 12(b)(6) motion. However, [Plaintiff has] not objected to [Defendants'] motion on that ground . . . and we will address the merits of [Defendants'] preemption defense." *Sanchez v. Haltz Const., Inc.*, No. 09 C 7531, 2012 WL 13514, at *8 (N.D. Ill. Jan. 4, 2012) (citing *Kyriakoulis v. DuPage Health Center, Ltd.*, No. 10 C 7902, 2011 WL 2420201, at *1 (N.D. Ill. June 9, 2011)).

---

[1] We will discuss Defendants' preemption defense involving Count VIII, a state law equitable claim for quantum meruit, in Part II, *infra*.

The FLSA requires employers to pay overtime wages and establishes employees' amount of compensation. *See* 29 U.S.C. § 207(a)(1). "[I]mplied preemption . . . occurs when the structure and purpose of federal law [FLSA] shows Congress's intent to preempt state law." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010); *see also Nicholson v. UTi Worldwide, Inc.*, No. 3:09-CV-722-JPG-DGW, 2010 WL 551551, at *6 (S.D. Ill. Feb. 12, 2010) (if a state law claim is directly covered by the FLSA, the FLSA preempts that claim). Nevertheless, when making this preemption determination, "if all that is sought in a state law quantum meruit or unjust enrichment claim is unpaid overtime compensation or minimum wages that are guaranteed by the FLSA, those state law claims are preempted." *Id.* "Courts in this District and elsewhere routinely hold that the FLSA preempts unjust enrichment and other state common law claims that rest on the same factual foundation and seek the same relief as an FLSA claim." *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510896, at *6 (citing cases). However, "if the state common law claim seeks something other than what the FLSA can provide, such as, for example, regular wages not paid at the contracted rate, the claim is not preempted." *Nicholson*, 2010 WL 551551 at *6.

Plaintiff insists that he has pleaded a different set of operative facts for the State Common Law Claims, separate from his FLSA overtime pay claims. Specifically, Plaintiff alleges certain Defendants owe him unpaid straight-time wages for the twelve weeks preceding his employment termination, referred to as "gap time."

7

After reviewing the allegations in the Amended Complaint, Plaintiff does not explicitly plead "gap time," however he does differentiate his overtime pay claims under the FLSA from his regular wage claims as two separate incidents. It is quite clear that the FLSA only covers overtime and wage requirements and does not provide relief for regular wages stemming from alleged breaches of Plaintiff's employment and consulting agreements. To the extent Plaintiff seeks pay for his regular wages in the State Common Law Claims, exclusive from his claims for overtime pay, Counts II, V, and VII are not cognizable under the FLSA and therefore, survive preemption. *See, e.g., Kyriakoulis*, 2011 WL 2420201, at *1-2 (finding that the FLSA preempted state common law claims for unjust enrichment, quantum meruit, and breach of implied contract *based upon unpaid overtime*) (emphasis added).

### II. Preemption—Count VIII

Defendants also argue that Count VIII should be preempted because Plaintiff bases it on the same factual assertions as his FLSA claims. Additionally, Defendants argue that in some of Count VIII's incorporated paragraphs, Plaintiff refers to "employment" and "overtime," thus exhibiting the same factual predicate of his FLSA-based claims. Plaintiff concedes that these allegations exist in Count VIII, but requests leave to amend Count VIII for the purpose of properly reforming the claim. The Court agrees that Count VIII contains incorporated paragraphs that share factual allegations about overtime compensation, triggering preemption under the FLSA.

Count VIII is dismissed without prejudice, however, and Plaintiff is permitted to amend his claim consistent with our findings on preemption, *infra*, Part I(A) if he so chooses.[2]

### III. Allegations of Punitive Damages—Counts II and VII

Defendants next argue that Counts II and VII should be dismissed for another reason—Plaintiff is not entitled to punitive damages for these state common law breach of contract claims as he so alleges. In his response to Defendants' partial motion to dismiss, Plaintiff concedes that these punitive damages allegations should be stricken under Fed. R. Civ. P. 12(f). The Court agrees. Punitive damages are generally not recoverable in breach of contract actions unless the breach itself is actionable as an independent tort, which is not the case in the instant matter. *Cruthis v. Firstar Bank, N.A.*, 954 Ill. App. 3d 1122, 1131, 822 N.E.2d 454, 463 (2004); *see also Morrow v. L.A. Goldschmidt Assocs., Inc.*, 112 Ill. 2d 87, 96 Ill. Dec 939, 492 N.E.2d 181, 183 (1986) ("The sole purpose of contract damages is to compensate the

---

[2] As an aside, Defendants also insist that Count VIII, Plaintiff's quantum meruit claim against APC and CIPM, should be dismissed because a claim for quantum meruit is a question for the Court and not a jury. In a footnote of his response, Plaintiff again concedes Defendants' argument and asks the Court to strike this controversial allegation as well. However, Defendants are incorrect when stating that "the district court must nonetheless make an independent judgment as to any equitable claim." When a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether*, 415 U.S. 189, 196 n. 11 (1974); *see also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.,* 299 F.3d 643, 650 (7th Cir. 2002) ("Common issues, if triable at all in the sense that their resolution requires resolving a material dispute of fact . . . must be tried to a jury in order to prevent a judge's determination from foreclosing a party's right to have the issues in a common law suit tried by a jury."). Even though Plaintiff agrees with Defendants' argument, we decline to strike Plaintiff's jury request in Count VIII because it is premature for the Court to determine if common issues in Count VIII exist in the other surviving claims.

nonbreaching party, and punitive damages are not available even for a 'wilful' breach of contract."). Therefore, the Court will not dismiss Counts II and VII and will simply strike Plaintiff's request for punitive damages from the Amended Complaint.

**IV. Sole Shareholder Issue—Count V**

In addition to their preemption argument, Defendants also claim that Count V is subject to dismissal for failure to state a cause of action. More specifically, Defendants argue that Dr. Kondelis, as the sole shareholder of APC, and the principal member of CIPM, cannot interfere with a corporation's contract because he is a party of this alleged contract. Plaintiff disagrees, stating that a sole shareholder of a corporation can interfere with a contract under Illinois law.

To state a *prima facie* case of intentional interference with a contract in Illinois, Plaintiff must allege: (i) the existence of a valid and enforceable contract between Plaintiff and another; (ii) Defendants' awareness of the contractual obligation; (iii) Defendants' intentional and unjustified inducement of a breach of contract; (iv) a subsequent breach by the other caused by Defendants' wrongful conduct; and (v) damage. *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1038 (1998). "An action for tortious interference with contract requires the plaintiff to prove that the defendant induced a third party to breach a contract." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014).

The question raised by Count V is whether Dr. Kondelis can interfere with his own alleged contract with Plaintiff. The parties cite to various cases, both binding and persuasive, to support their arguments. Plaintiff heavily relies on *Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir. 1995) (holding that "[d]irectors and officers are not justified in acting solely for their own benefit or solely in order to injure the plaintiff because such conduct is contrary to the best interests of the corporation"), and Defendants consistently cite to *Rao v. Rao*, 718 F.2d 219, 225 (7th Cir. 1983) (emphasizing that a sole shareholder, officer, and director could not be considered to be an entity separate from the corporation). In *Stafford*, the Seventh Circuit acknowledged *Rao* as good law, but distinguished its facts from those of *Rao*, stating:

> The Puros first argue that they could not have tortiously interfered with Stafford's compensation agreement because they themselves were parties to that contract. *See Worrick*, 272 N.E.2d at 711 (claim will not lie against a party to the contract). They rely on *Rao v. Rao*, 718 F.2d 219, 225 (7th Cir. 1983), in which this court held that the sole shareholder and officer of a corporation was a party to the contract between the plaintiff and the corporation, and thus could not have tortiously interfered with the agreement, because the corporation could not act without the shareholder's involvement. The Puros argue that because they owned the majority of Purofied and were directors and officers, they are likewise not liable. We disagree.
>
> In *Rao*, we emphasized the fact that the corporation did not exist but for the individual defendant—he owned all of the stock and ran it singlehandedly. *Id.* Arthur owned 44% of Purofied, and while Louis personally owned none, the Louis Puro Family Trust, which he controlled, held an equivalent stake in the company. Sam Puro owned the remainder, a significant portion, of Purofied stock. As officers and directors, Louis and Arthur thus had duties to persons other than themselves, unlike the defendant in *Rao*.

*Stafford*, 63 F.3d at 1441-42.

In his Amended Complaint, Plaintiff alleges on information and belief that Dr. Kondelis: (i) is the sole shareholder of APC; (ii) is the principal member of CIPM; (iii) exercises final managerial control over his companies; (iv) has the authority to hire and fire APC and CIPM employees; (v) has the authority to direct and supervise the work of APC and CIPM employees; (vi) has the authority to sign on APC's and CIPM's checking accounts, including payroll accounts; and (vii) has the authority to make decisions regarding employee compensation and capital expenditures. Based on these allegations, APC or CIPM would not exist but for Dr. Kondelis. There is no mention of other corporate partners, trusts with interest, or additional stakeholders other than Dr. Kondelis. Furthermore, Plaintiff fails to allege any role Dr. Kondelis may have had as a corporate manager or officer and instead, relies on conclusory allegations that Dr. Kondelis acted with malice when tortiously interfering with Plaintiff's contract. *See, e.g., George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326 (7th Cir. 1983) (whether corporate managers/officers can be held liable for inducing the corporation to breach a contract is another issue); *see also Stafford*, 63 F.3d at 1442 (7th Cir. 1995) ("Malice, 'in the context of interference with contractual relations cases, simply means that the interference must have been intentional and unjustified.' ") (internal citation omitted). For these reasons, the Court agrees that the facts of the instant matter align with *Rao* and hold that Dr. Kondelis, as the alleged single operator and stakeholder of APC and CIPM, cannot tortiously induce a breach of his own alleged contract with Plaintiff. Plaintiff's conclusory

allegations about Dr. Kondelis acting with malice do not alter this conclusion. As such, Plaintiff has not stated a claim for tortious interference with a contract under Illinois law and the Court grants Defendants' motion to dismiss Count IV.

## CONCLUSION

For the aforementioned reasons, Defendants' partial motion to dismiss is granted in part and denied in part. The Court dismisses Count V with prejudice and Count VIII without prejudice. Counts II and VII remain, however, Plaintiff's allegations requesting punitive damages in those respective claims are stricken.

_____
Charles P. Kocoras
United States District Judge

Dated: 8/18/2015